JOSEPH A. WICKERSHAM *et al. vs.* THOMAS J. SOUTHARD *et al.*

Sagadahoc.    Decided August 5, 1877.

*Shipping.*

Though the owners of a vessel let on shares to the master are not liable for disbursements on its account, when the master by the terms of the letting has the entire control and management of the same; yet to exonerate the owners it must affirmatively appear that the master has such entire control.

ON REPORT.

ASSUMPSIT on account annexed, $223.75, on account of the schooner Walton, embracing the following items: 1871, July 7. To commissions on coal freight for Charleston, S. C., $441.50, at 5 per cent, $22.00. Paid stamps on lumber charter party, $1.75. Paid Captain Gardiner for disbursements, $50.00. August 30. Paid custom house fee, $3.22. Paid warden fee, $1.00. Paid protest, $1.50. Paid health fee, $1.00. Paid towage, $1.00. Insurance by order of Gardiner, $4.50. Extending protest by order of underwriters, $15.30. Commissions on lumber charter from Bucksville, S. C., to Philadelphia, $70.00. Interest, $52.48.

The defense was that the master, Captain P. B. Gardiner, had the control and not the owners.

The evidence tended to show that the master sailed the schooner on shares, and that the owners settled up with him in October, 1871, and discharged him, and that they allowed him in their final settlement many of the items charged in the account annexed, some half or more of the account.

Charles Southard, one of the defendants, testified that there was no written contract with Captain Gardiner. To the question, what was the contract, he answered: "He sailed her on shares." He testified further that his settlement showed that Gardiner sailed the schooner from about the last of June to October, 1871; that the accounts in Gardiner's handwriting showed all the transactions with the schooner while he sailed her. "I purchased of him the stores he had left." In cross-examination, witness testified: "I wrote Captain Gardiner once or twice while he was in Philadelphia; I wrote him to come to Richmond with a cargo of coal, after he came from Bucksville. That was just before I settled with him."

*J. W. Spaulding, J. Millay & F. J. Buker*, for the plaintiffs.
*C. W. Larrabee*, with *W. T. Hall*, for the defendants.

APPLETON, C. J. The defendants are the owners of the schooner Walton of which one Philip B. Gardiner was master. This suit is for disbursements and services rendered the schooner, at Philadelphia, by the plaintiffs at the instance of the master and on the credit of the owners, to whom the charges were made.

It appears from the testimony of one of the defendants that the vessel was let on shares to the master. As to the important question, whether the master was to have the entire control and management of the vessel, the witness was silent and there was no other evidence on the subject. The master was not called to testify. In a charter party introduced in evidence Capt. Gardiner describes himself as master and agent. The defendant further testified that he "wrote him (the master) to come to Richmond with a cargo of coal" just before he settled with him. In the settlement between the master and the owners his receipt is as follows: "Received payment of T. J. S. & Co. as above in full for my services and wages and all bills."

To relieve the owners of a vessel let on shares to the master, it must affirmatively appear that the master has the entire control and direction of the vessel, with no right of interference on the part of the owners. It is not enough merely to show that the vessel is let on shares. In *Emery* v. *Hersey*, 4 Maine, 407, it was in proof that the vessel was let on shares, but it appeared that the owners, notwithstanding, interfered with the management of the vessel and they were held liable. "In this case," observes Weston, J., "he was to victual and man the vessel and to have one-half of the freight money, and five dollars on each trip, for his compensation; but it is nowhere testified that he was to have control of the vessel. . . His right to a portion of the freight, was only the stipulated mode of compensation." In *Thompson* v. *Snow*, 4 Maine, 264, the master had the entire control of the vessel without interference from the owners. Consequently they were not liable. In *Lyman* v. *Redman*, 23 Maine, 289, Tenney, J., says: "The cases are numerous, which show that the taking the vessel by the master, victualing and manning her, and paying a portion of the port charges and having a share of the profits, do not of themselves constitute him the owner *pro hac vice*. It is the entire control and direction of the vessel, which he has the right to assert, and the surrender by the owners of all power over her for the time being, which will exonerate them from the liability of the contracts of the master, relating to the usual employment of the vessel in the carriage of goods. The expense of victualing and manning the vessel and receiving compensation for his services and disbursements in a share of the profits by the master, are by no means inconsistent with the right of the employer or owner, to have the general direction of the business in which she is engaged." In *Sims* v. *Howard*, 40 Maine, 276, the master sailed the vessel on shares, but it did not appear that he had control over her. It was held, consequently, that the owners might recover for freight. "If," remarks Tenney, J., "he was to pay one-half of the gross earnings of the vessel to the owner, he was entitled, under the agreement, to receive the other half for his services and disbursements. This is substantially the same as a right to one-half of the gross earnings for his services

and expenses in sailing the vessel; and confers no authority to control her. The master was still the servant of the owners, and his right to a part of the earnings of the vessel was no more than a mode of compensation agreed upon with them." In *Bonzey* v. *Hodgkins*, 55 Maine, 98, the court say: "The mere fact that the vessel was taken on shares does not discharge the owners. Their control must cease." In *Hall* v. *Barker*, 64 Maine, 339, and in *Somes* v. *White*, 65 Maine, 542, as well as in the other cases to which our attention has been called, it will be found that wherever the owners were exonerated from liability, the master had the entire control and direction of the vessel without interference or the right to interfere on the part of the owners.

The defendants are liable unless they can transfer their liability to the master. This they have not so done. It does not affirmatively appear that the master had the entire con trol and direction of the vessel. It does appear that the owners gave directions as to the movements of the vessel and settled with the master for his "services and wages." The silence of the owners as to the point upon which their liability turns is suggestive.

*Judgment for plaintiffs.*

WALTON, BARROWS, VIRGIN, PETERS and LIBBEY, JJ., concurred.